CARSON L. WHITEHEAD, OSB No 105404
Assistant Attorney General for the State of Oregon
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
Telephone: (503)378-4402
Facsimile: (503)375-6306
Carson.l.whitehead@doj.oregon.gov

*Attorneys for State of Oregon*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| KRISTINE REIGER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ST. CHARLES HEALTH SYSTEM, INC., an Oregon nonprofit corporation, RAY KLEIN, INC., a foreign corporation,<br><br>    Defendants. | Case No.: 6:24-cv-00334-MC<br><br><br>STATE OF OREGON'S AMICUS CURIAE BRIEF |

## INTRODUCTION

In Oregon, as is true across the country, medical debt is a leading cause of personal bankruptcies. Many individuals and families are one medical emergency away from insolvency. Although the number of Oregonians with health insurance has

PAGE 1- STATE OF OREGON'S AMICUS CURIAE BRIEF

increased, the costs of health care has also increased. And many insurance plans have coverage gaps and high deductibles that expose individuals to enormous financial risk.

To help address the problem of medical debt, the Oregon Legislative Assembly in 2019 established minimum requirements for nonprofit hospitals to provide financial assistance to low-income individuals. Although state and federal law already required nonprofit hospitals to have charity care policies as a condition of their tax-preferred status, the amount of charity care in Oregon had been declining, despite an increase in the amount of medical debt carried by low-income individuals. House Bill 3076 (2019) requires hospitals to provide 100% financial assistance for individuals whose income is under 200% of the federal poverty level and establishes a graduated scale of assistance up to 400% of the federal poverty level.

The bill, now codified at ORS 646A.677, also governs how and when a hospital may send a patient's unpaid charges to a debt collector. As relevant here, before sending an unpaid charge to a debt collector, the hospital must screen the patient to determine whether they qualify for 100% forgiveness of their unpaid charge. ORS 646A.677(4)(a). Additionally, the hospital must send the patient an application for financial assistance before sending their charges to a debt collector. ORS 646A.677(4)(b). As explained below, if a patient qualifies for 100% forgiveness of the unpaid charge, then the hospital cannot collect on the debt. For those who do not qualify for 100% forgiveness, the hospital can collect on the unpaid charge, but only after sending them an application for financial assistance.

PAGE 2- STATE OF OREGON'S AMICUS CURIAE BRIEF

In this case, defendant St. Charles Health System takes a different view. St. Charles argues that it may send an unpaid patient charge to collections even when it determines that the patient qualifies for 100% forgiveness of that charge, so long as it also sends an application to the patient. In its view, the hospital's determination that the patient is eligible for 100% debt forgiveness does not prevent debt collection. Nor does St. Charles believe that it has any obligation to notify a patient that she qualifies for 100% debt forgiveness.

St. Charles's construction of ORS 646A.677(4) is wrong. The text and context show the legislature's intent to prohibit nonprofit hospitals from sending an unpaid charge to a debt collector when the patient qualifies for 100% debt forgiveness. One of the central purposes of HB 3067 was to prevent individuals who qualify for debt forgiveness from ending up in the debt collection process. That purpose is defeated by St. Charles's interpretation. To the extent that the text of ORS 646A.677(4) is capable of multiple interpretations, the legislative history resolves any ambiguity. Representative Andrea Salinas, the chief architect and sponsor of the bill, testified that hospitals cannot send a patient to collections if their screening determines that the patient is eligible for 100% debt forgiveness. A representative from Providence Hospital System testified to the same understanding.

Based on the text, context, and legislative history, this court should reject St. Charles's construction of ORS 646A.677(4) and conclude that a nonprofit hospital is

Department of Justice
1162 Court St NE
Salem, OR 97301

barred from sending a patient's unpaid charge to a debt collector if the hospital determines that the patient is eligible for debt forgiveness.

## INTEREST OF AMICUS

As explained in the motion to appear, the state has a strong interest in the correct interpretation of ORS 646A.677(4). First, the Attorney General is responsible for enforcing ORS 646A.677 under the Unlawful Debt Collection Practices Act, ORS 646.639. Second, the state regulates nonprofit hospitals and has an interest in ensuring that they are following the law as the legislature intended. Third, the correct interpretation of ORS 646A.677(4) is important for the people of Oregon, who provide tax breaks for nonprofit hospitals and who stand to benefit from medical assistance.

## ARGUMENT

A.    **In adopting HB 3076, the legislature sought to protect needy individuals from medical debt and to ensure that nonprofit hospitals provide adequate benefits to the public.**

The vast majority of hospitals in Oregon are nonprofits. To maintain their nonprofit status, federal law requires hospitals to adopt policies to provide financial assistance to needy individuals and to analyze how they provide benefits to the community. *See* 26 U.S.C. § 501(r)(4); 26 C.F.R. § 1.501(r)-4(b)(1)(iii). Federal law, however, imposes few specific requirements about who is eligible for financial assistance, what constitutes community benefits, or the amounts that nonprofit hospitals must spend on those benefits. The states are free to fill those gaps.

In 2019, the legislature did just that, passing House Bill 3076 to make sure that the people of Oregon were receiving adequate benefits in exchange for the substantial tax

PAGE 4- STATE OF OREGON'S AMICUS CURIAE BRIEF

advantages that nonprofit hospitals realize.  There are three interrelated components of the bill.  First, the bill sets mandatory criteria for financial assistance.  Now codified at ORS 442.614, the bill requires a hospital to provide 100% financial assistance for individuals earning less than 200% of the federal poverty level.  ORS 442.614(1)(a)(A).  Between 200 and 400% of the federal poverty level, the hospital must provide financial assistance on a sliding scale. ORS 442.614(1)(a)(B)–(D).  Second, the bill requires a nonprofit hospital to screen a patient for financial assistance upon request and requires the hospital to screen a patient for financial assistance before it can send an unpaid charge to a debt collector, as discussed in more detail below.  ORS 646A.677(3)–(4).  The bill authorizes hospitals to use commercially available services, like Experian, to screen patients for eligibility.  ORS 646A.677(5).  The bill also limits the interest that the hospital or debt collector can charge.  ORS 646A.677(7)–(8).  Third, the bill requires the Oregon Health Authority to promulgate regulations that establish a minimum amount of community benefit spending for nonprofit hospitals.  ORS 442.624.  Community benefits include financial assistance and other activities intended to benefit the larger community. *See* ORS 442.601 (defining "charity care" and "community benefit").

The issue in this case what the legislature intended when it adopted the requirements for sending a patient's unpaid charge to a debt collector.  Those requirements provide as follows:

> (4) Before transferring an unpaid charge for services to a debt collector or referring an unpaid charge for collection, a hospital or hospital-affiliated clinic shall:

PAGE 5- STATE OF OREGON'S AMICUS CURIAE BRIEF

      (a) Conduct a screening to determine if the patient qualifies for financial assistance as described in ORS 442.614 (1)(a)(A), if applicable; and
      (b) Provide a copy of its financial assistance policy to the patient along with an application for financial assistance.

ORS 646A.677(4).

      After the passage of HB 3076, the legislature passed House Bill 3320 in 2023. That bill imposed additional requirements for the provision of financial assistance. Now codified at ORS 442.615, the bill requires nonprofit hospitals to screen certain patients for eligibility for financial assistance, using a process established by OHA. ORS 442.615(2)–(3). That process applies when the patient is uninsured, is enrolled in Oregon's medical assistance program, or owes the hospital more than $500. If a patient is presumptively eligible for financial assistance under that process, then the hospital must apply "any financial assistance for which the patient qualifies" before sending a bill to the patient. ORS 442.615(3)(c); *see* OAR 409-023-0120 (OHA rules governing screening for financial assistance). The requirements of ORS 442.615 became operative on July 1, 2024. Those requirements are separate from the debt-collection provisions at issue in this case.

**B.**    **Under ORS 646A.677(4), a hospital may not send an unpaid charge to a debt collector when the hospital has determined that the patient qualifies for 100% medical assistance.**

      In adopting the restrictions on debt collection by nonprofit hospitals in ORS 646A.677(4)(a), the legislature intended to protect patients eligible for financial assistance from being sent to collections. By placing the burden on the hospital to screen its patients for eligibility prior to sending an unpaid charge to a debt collector, the legislature intended to avoid entangling a patient in the debt-collection process when the

PAGE 6- STATE OF OREGON'S AMICUS CURIAE BRIEF

hospital itself already determined that the patient qualified for assistance.  Then, under

ORS 646A.677(4)(b), if the hospital determined that a patient did not qualify for

assistance or qualified for partial assistance, the hospital must send that patient an

application, which permits that person to apply for assistance and contest, if necessary,

the hospital's initial determination.

St. Charles' construction of the statute eliminates the protective purpose of ORS

646A.677(4)(a) entirely.  In its view, the "only benefit a patient receives for being

determined eligible during a screening for full forgiveness as described in the hospital's

policy is a copy of that policy and an application for financial assistance before the debt

is sent to collections."  (St. Charles Reply at 5; ECF 52 at 11).  As explained below, St.

Charles's construction is flatly contradicted by the legislative history and is not consistent

with the text and context.

**1.    The legislative history of HB 3076 directly supports the state's reading of ORS 646A.677(4)(a).**

This is the rare case in which the legislative history directly addresses the issue

disputed by the parties.  Although the text and context of a statute are the best indicators

of legislative intent, legislative history can be helpful in resolving disputes about the

meaning of a statute, particularly when the legislative history reflects the views of the

bill's sponsor.  *See In re Marriage of O'Donnell-Lamont*, 337 Or. 86, 105 n.9, 91 P.3d

721 (2004) (relying on statement of bill sponsor in committee), *cert. denied,* 543 U.S.

1050 (2005); *Belknap v. U.S. Bank Nat'l Ass'n*, 235 Or. App. 658, 670–71, 234 P.3d 1041

(2010) (same).  Here, the legislative history directly supports the state's reading of ORS

646A.677(4)(a).

In testimony before the House Committee on Rules, Representative Andrea

Salinas, the sponsor of HB 3067, testified that the requirement to screen patients for

medical assistance before referring them to a debt collector was intended to prevent

hospitals from sending the patient to collections.  Concerning the -7 amendments to HB

3076, the version that was enacted, she explained as follows:

> Amendments to HB 3076 will require hospitals to screen patients
> prior to sending them to collections to determine eligibility under section
> 2(1)(a) and 3(1)(a) [the requirement for 100% medical assistance].  In other
> words, the amendment seeks to determine whether the patient qualifies for
> a 100% discount on the patient responsibility portion of the bill because the
> patient is at or below 200% of federal poverty level.
> * * *
> Experian has a tool that many health care systems in Oregon use to
> do this kind of screen today.  This tool uses information available to entities
> like Experian to screen for that eligibility.  While accurate, these tools may
> not capture everyone who may be eligible for a discount if they applied
> directly to the hospital for financial assistance. But our intent here is that
> hospitals use tools like the Experian tool to conduct these screens.
> If patients are screened and found eligible for a 100% discount under
> section 2(1)(a) and 3(1)(a), the patient's balance will be reduced to zero and
> *that patient will not be sent to collections*.

Testimony of Rep. Salinas, House Committee on Rules, HB 3076, May 6, 2019

(recording log at 00:48:57 to 00:50:04) (emphasis added).  Plainly, the sponsor

and chief architect of the bill intended to prevent hospitals from sending an unpaid

charge to collections if the hospital determined that the patient qualifies for 100%

financial assistance.

PAGE 8- STATE OF OREGON'S AMICUS CURIAE BRIEF

Rep. Salinas's testimony also reflects that the requirement to provide the financial assistance policy and application as independent from the screening requirement.  After stating that patients who qualify for 100% medical assistance will not be sent to collections, Rep. Salinas described the hospital's obligations to provide the policy and application:

> The dash-7 amendment will also require the hospital to provide the financial assistance policy to anyone who requests it.  They will be required to send a patient the financial assistance policy as well as the application prior to being sent to collections.

Testimony of Rep. Salinas, House Committee on Rules, HB 3076, May 6, 2019 (recording log at 00:50:05 to 00:50:19).

Jessica Adamson, a representative of Providence Hospital Systems, testified that Providence also understood the bill to prevent sending a patient's unpaid charge to collections when the patient qualified for 100% financial assistance.  She explained that, consistent with Providence's existing practices, the bill requires

> screening folks . . . before they head to collections to make sure if they're eligible for a discount below 200% of the federal poverty level that we don't send them to collections, that we write their debt off. Um, we think that that's pretty important because there are people even below what would normally be eligible for Medicaid that are not eligible for Medicaid in this state for a variety of very complex reasons.  This will make sure that they don't find themselves in collections.

Testimony of Jessica Adamson, House Committee on Rules, HB 3076, May 6, 2019 (Recording log at 01:02:37 to 01:03:03).

In short, to the extent that the text of ORS 646A.677(4) is susceptible St. Charles's interpretation, the legislative history shows that St. Charles's interpretation is wrong.

**2.      The text and context do not support St. Charles's interpretation.**

PAGE 9- STATE OF OREGON'S AMICUS CURIAE BRIEF

The parties' briefing contains an extensive and complicated statutory analysis.  In the state's view, the correct reading of ORS 646A.677(4) is straightforward.  Under that statute, a nonprofit hospital must satisfy two separate conditions to collect an unpaid charge.  First, "before" sending an unpaid charge to debt collector,[1] the hospital must "[c]onduct a screening to determine if the patient qualifies for financial assistance as described in ORS 442.614(1)(a)(A), if applicable."  Second, "before" sending an unpaid charge to a debt collector, the hospital must provide "a copy of its financial assistance policy to the patient along with an application for financial assistance."  ORS 646A.677(4).  As set out in ORS 442.614(1)(a)(A), a nonprofit hospital's financial assistance policy must "[p]rovide for adjusting a patient's costs as follows: (A) For a patient whose household income is not more than 200 percent of the federal poverty guidelines, by 100 percent[.]"  A "patient's cost" is defined as the portion of charges for a patient's medically necessary care "that are not reimbursed by insurance or a publicly funded health care program."  ORS 442.614(9).

The key requirement of ORS 646A.677(4)(a) is that a hospital must "determine" whether a patient qualifies for 100% financial assistance prior to sending that patient's

---

[1]     In addition to regulating when a nonprofit hospital can send an unpaid charge to a debt collector, ORS 646A.677(4) also regulates when a hospital can "refer[] an unpaid charge for collection."  Because this case apparently concerns sending charges to a debt collector, the state does not address what it means for a hospital to refer an unpaid charge for collection.  However, under the plain language of HB 3076, hospitals must screen before referral and must provide a 100% adjustment for patients who qualify. ORS 646A.677(4)(a); ORS 442.614(1)(a)(A).

PAGE 10- STATE OF OREGON'S AMICUS CURIAE BRIEF

unpaid charge to a debt collector.  In this context, "determine" means that the hospital

must make a decision about the patient's eligibility based on its screening.  *Merriam-*

*Webster's Unabridged Dictionary*, https://unabridged-merriam-webster-

com.soll.idm.oclc.org/unabridged/determine. Accessed 8/16/2024 (defining "determine"

as "to come to a decision concerning as the result of investigation or reasoning").  That is

not merely a requirement to screen, as St. Charles contends.  What matters is the

hospital's determination that the patient is eligible for 100% financial assistance under

ORS 442.614(1)(a)(A).  And if the hospital determines that the patient is eligible, then

the hospital has no basis to collect on the debt.

**3.    The Oregon Health Authority does not share St. Charles's view of ORS 646A.677(4).**

St. Charles asserts that a report from the Oregon Health Authority on the

implementation of HB 3076 supports its construction of ORS 646A.677(4).  (St. Charles

Mot. at 19, ECF 45 at 24). St. Charles is incorrect.  The OHA report does not directly

address the question whether a hospital can determine that a patient is eligible for 100%

financial assistance but refer that patient to collections anyway.  *See* Oregon Health

Authority, HB 3076 Implementation Report (Dec. 2022),

https://www.oregon.gov/oha/HPA/ANALYTICS/HospitalReporting/HB-3076-Comm-

Benefit-Leg-Report.pdf?utm_medium=email&utm_source=govdelivery.   To the extent

that the report discusses debt collection, it is consistent with the state's position here.

The report summarizes the debt collection protections in HB 3076 as follows:

> Hospitals are prohibited from referring patients to collections prior to
> screening them for financial assistance eligibility. If patients qualify for

PAGE 11- STATE OF OREGON'S AMICUS CURIAE BRIEF

> financial assistance, hospitals cannot charge interest on amounts still owed
> to the hospital. HB 3076 also provides a private right of action under the
> federal Unfair Debt Collection Act to patients who do not receive financial
> assistance and/or protection from debt collection and interest charges as
> specified in the bill.

*Id*. at 2.  If the OHA report agreed with St. Charles's position that HB 3076 merely imposed a screening requirement, it would not have asserted that patients have private right of action when they "do not *receive financial assistance* and/or protection from debt collection." *Id*. (emphasis added).  The report also cites examples of patients who were below 200% of the federal poverty level but had judgments entered against them based on medical debt.  *Id*. at 20.  The report notes that those examples appear to be a violation of HB 3076.  *Id*.  In short, to the extent that St. Charles asserts that the OHA report supports its reading, St. Charles is mistaken.

## CONCLUSION

This court should reject St. Charles's construction of ORS 646A.677(4) and concluded that the statute prohibits sending a patient's unpaid charge to collections if the hospital's screening determines that the patient is eligible for 100% financial assistance.

Dated this 19th day of August 2024.

ELLEN F. ROSENBLUM
Attorney General

/s/ Carson L. Whitehead
CARSON L. WHITEHEAD #105404
Assistant Attorney General
Carson.l.whitehead@doj.oregon.gov

Attorney for The State of Oregon