**David F. Sugerman**, OSB #862984
**Nadia H. Dahab**, OSB #125630
SUGERMAN DAHAB
101 SW Main Street, Suite 910
Portland, Oregon 97204
Telephone: (503) 228-6474
Email: david@sugermandahab.com
Email: nadia@sugermandahab.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| KRISTINE REIGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ST. CHARLES HEALTH SYSTEM, INC., an Oregon nonprofit corporation, RAY KLEIN, INC., a foreign corporation,<br><br>Defendants. | Case No. 6:24-cv-00334-MC<br><br>**PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS** |

Plaintiff Kristine Reiger is an Oregonian who was eligible for charity care when she received medical care at the St. Charles Health System (St. Charles) hospital in Bend. At the heart of this case is the question of whether St. Charles failed to comply with Oregon's requirement that public hospitals screen patients for charity care eligibility before "transferring an unpaid charge for services to a debt collector *or referring an unpaid charge for collection.*" ORS 646A.677(4) (emphasis added). The statute differentiates between transferring an unpaid charge to a debt collector and referring an unpaid charge for collection to any party that does

PAGE 1 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

collections, regardless of whether the entity receiving the referral is a "debt collector." *See* ORS 646.639(1)(h) (defining "debt collector").

This Court held argument on the hospital's and the debt collector's motions to dismiss and for summary judgment. *See* ECF Nos. 45, 46. The Court found the record insufficient to determine whether St. Charles's referral of Plaintiff's unpaid charges to non-party Ameri EBO LLC ("Ameri EBO," also referred to as "Early Out"), is the type of referral contemplated in the statute. The Court therefore ordered the parties to undertake a 30-day period of limited discovery focused on questions the Court raised relating to Ameri EBO's role in collecting Plaintiff's unpaid medical bill. Specifically, the Court ordered the parties to exchange discovery relating to (1) Ameri EBO's contractual relationship with St. Charles, including financial aspects, such as payment for Ameri EBO's services or any profit sharing arrangements; (2) any script or standard message that Ameri EBO uses for unpaid bill calls; (3) all correspondence sent to Plaintiff or left on her voicemail; and (4) any other matters relevant to the resolution of whether Ameri EBO is or should be considered a party to whom St. Charles "referr[ed] an unpaid charge for collection" within the meaning of ORS 646A.677(4). ECF 62. Plaintiff then requested documents from St. Charles, which the hospital produced. Dahab Decl. ¶ 2. Plaintiff also took a limited Rule 30(b)(6) deposition addressing the role of Ameri EBO in St. Charles's efforts to collect payment from Plaintiff on her unpaid charge. Dahab Decl. ¶ 3.

Per the Court's order, ECF 62, Plaintiff offers the following summary of additional facts obtained during discovery and memorandum of law demonstrating that Ameri EBO should be considered a party to whom St. Charles referred an unpaid charge for collection within the meaning of ORS 646A.677(4). Because it is undisputed that St. Charles referred Plaintiff's unpaid charge to Ameri EBO before screening to determine her eligibility for charity care, Defendants' pending motions should be denied.

## ADDITIONAL FACTS

In addition to the facts set forth in Plaintiff's response in opposition to St. Charles' motion to dismiss and motion for summary judgment, ECF 49, Plaintiff states the following facts obtained in the period of early limited discovery this Court allowed.

### I. St. Charles's Debt Collection Process

Collecting patient debts is a responsibility that Defendant St. Charles outsources to two entities.[1] The first entity, Ameri EBO, or Early Out, assumes responsibility for what St. Charles refers to as "self-pay liabilities," or debts the patient owes, from the outset of the collections process. *See* Dahab Decl. ¶ 4, Ex. 1 ("Crowl Trans.") at 13:8–18 (self-pay liability is a debt owed by the patient; *id.* at 13:8–18 (once a self-pay liability is created, St. Charles refers the liability to Ameri EBO for collection). The agreement between St. Charles and Ameri EBO describes Ameri EBO's collections work as "collection and customer service in the name of St. Charles on non-delinquent self-pay balances due" to St. Charles by certain patients. Dahab Decl. ¶ 5, Ex. 2. Ameri EBO's role, then, generally is to "tr[y] to collect money from [St. Charles] patient[s]" to pay their bills. Crowl Trans. at 19:15–21. The second entity, Defendant Ray Klein, handles only what St. Charles refers to as "extraordinary collection actions," or the collection of debts that remain unpaid after Ameri EBO has exhausted its collection efforts.

Ameri EBO's collections process is divided into six "levels" approved by St. Charles. The process is shown on its "Self-Pay Follow Up Levels and Outsourcing Current Process" flowchart—a chart that St. Charles developed as internal guidance for its billing office and Ameri EBO. Dahab Decl. ¶ 6, Ex. 3; Crowl Trans. at 14:8–20 (describing flowchart). Generally

---

[1] The facts set forth herein are facts in existence at all times relevant to this case. Plaintiff understands that, in mid-2024, St. Charles's process for collecting patient debts changed to comply with changes in Oregon law. Those changes are not relevant to Plaintiff's claims.

speaking, the process includes six approximate 30-day increments known as "levels"—according to the flowchart, Levels 0 through 5—during which the patient statement is generated and Ameri EBO conducts collection activities, including placing reminder calls and sending follow-up statements to the patient.

"Level 0" in the St. Charles process is the point at which the patient "qualifies for a statement"; in other words, the point at which the patient has received services from St. Charles, there's a debt owed, and a billing statement is prepared. Crowl Trans. at 16:3–15; *id.* at 17:2–6.

Once the billing statement is sent to the patient, the account proceeds to "Level 1," and the patient's account is referred to Ameri EBO. Crowl Trans. at 17:7–14. According to St. Charles, from Level 1 through Level 5, Ameri EBO is "really doing the heavy lifting of communication and outreach and reminder calls" to collect patient debt. Crowl Trans. at 18:5–12.[2] If the patient doesn't pay anything at Level 1, the debt becomes a "Level 2" debt, and Ameri EBO will start calling the patient to collect. After each 30-day period that the patient doesn't pay, the patient's debt proceeds to the next "level," up through Level 5. Crowl Trans. at 13:19–14:7.

Once the debt reaches Level 5, if the patient still hasn't paid, St. Charles finally screens the patient for financial assistance eligibility and sends income-eligible patients a financial assistance application. Crowl Trans. at 14:21–15:2. After Level 5, an unpaid debt is considered delinquent (*i.e.*, "bad debt") and is transferred to Defendant Ray Klein. Crowl Trans. at 14:21–

---

[2]    Crowl Trans. at 13:4–6 (describing Ameri EBO as "a business partner of St. Charles that helps us [with] the heavy lifting of communication and outreach to patients" for purposes of collecting on self-pay accounts); *id.* at 28:22–29:2 (St. Charles essentially has "outsourced the process of what could be done in house, which is collecting these debts").

PAGE 4 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

15:2.[3] As Plaintiff previously alleged, even if St. Charles knows the patient likely qualifies for financial assistance, St. Charles still transfers the debt to Ray Klein if the patient does not submit a completed financial assistance application. Crowl Trans. at 43:19–44:6. Again, the patient does not receive a financial assistance application from St. Charles until St. Charles and Ameri EBO have exhausted efforts to collect the debt at Level 1, Level 2, Level 3, and Level 4.

Importantly here, St. Charles does *not* conduct any screening to determine whether the patient qualifies for charity care before St. Charles's system transmits the account to Ameri EBO for collections. Crowl Trans. at 23:21–24:7. As noted, it's not until Level 5—after four statements are sent to the patient and Ameri EBO has attempted to collect the debt at least as many times, Crowl Trans. at 28:2–12; 39:4–40:8,[4] that St. Charles conducts a screening and, if the patient is income-eligible, sends them an application for financial assistance. *See also* Crowl Trans. at 24:11–19 (At "Level 5, if a patient has not paid, then there is a file that is sent to Experian to check the . . . federal poverty level."); *id.* at 25:4–7 (screening conducted at Level 5).

The payment arrangement between St. Charles and Ameri EBO is a typical arrangement between creditor and collector: Ameri EBO is paid a percentage of the revenue it collects from patients for St. Charles. Dahab Decl. ¶ 5, Ex. 2; Crowl Trans. at 21:9–12; *id.* at 64:14–23.

## II.    St. Charles's and Ameri EBO's Actions to Collect Plaintiff's Debt

St. Charles's handling of Plaintiff Kristine Reiger's unpaid debt was consistent with the process set forth above. Plaintiff received services at St. Charles on May 4, 2022. ECF 36 (First

---

[3]    Internally, St. Charles refers to the accounts transferred to Ray Klein as "extraordinary collection actions," or ECAs. Crowl Trans. at 33:5–19.
[4]    St. Charles testified that at each Level of the self-pay collection process, Ameri EBO calls the patient at least once, but "quite often more than on[ce]" for purposes of collecting the debt. Crowl Trans. at 39:15–40:8.

PAGE 5 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

Amended Complaint), ¶ 21; ECF 23-8 (Account History Report), at 18.[5] On June 21, 2022, St. Charles sent Plaintiff a statement showing an unpaid charge of $1,104.42 for those services, and on the same date referred her account to Ameri EBO for collections. ECF 23-8, at 14 ("collection" note stating, "Account sent to Outsource agency AMERIEBO").

Ameri EBO undertook work to collect on the account, and the account proceeded from Level 1 to Level 5 in St. Charles's collection process. ECF 23 (Crowl Decl.) ¶¶ 21, 22; Crowl Trans. at 53:15–55:1 (noting that Plaintiff's account was at Level 5 by Nov 21, 2022). This work included Ameri EBO leaving multiple voicemails for Plaintiff. Crowl Decl. ¶ 22. St. Charles has not produced recordings of the voicemails, but it appears they would have followed the Ameri EBO script, which says the call is from "St. Charles Health Patient Financial Services" and asks for a call back. Dahab Decl. ¶ 7, Ex. 4 (SCHS_00000019–39, at 39). There is no mention of potential eligibility for financial assistance in the script. *Id.* The script for calls when Ameri EBO reaches a patient was also produced. *Id.* at 38.

Once it reached Level 5, St. Charles screened Plaintiff for eligibility for financial assistance; learned that Plaintiff's income was below 200 percent of the federal poverty level (making her eligible for 100 percent adjudgment of her bill); and sent her a financial assistance application. *See* ECF 23-8, at 8 (showing 10/23/22 screening). Less than 30 days later, having not received Plaintiff's completed application, St. Charles categorized her account as "bad debt" and transferred the account to another entity for collection. ECF 23-8, at 7 ("collection" note stating, "Account sent to Bad Debt agency PROFESSIONAL CREDIT SERVICE from Outsource agency AMERIEBO").

---

[5] ECF 23-8 is Exhibit H to Ms. Crowl's Declaration and is entitled "Account History Report."

PAGE 6 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

## MEMORANDUM OF LAW

Oregon's financial assistance law requires hospitals to provide financial assistance to patients with income up to 400 percent of the federal poverty guidelines. ORS 442.614. A patient whose household income is up to 200 percent of the federal poverty guidelines is entitled to 100 percent bill forgiveness. Specifically, Oregon's financial assistance law provides,

> A nonprofit hospital's written financial assistance policy described in ORS 442.610 must:
>
> (a) Provide for adjusting a patient's costs as follows:
>
> (A) For a patient whose income is not more than 200 percent of the federal poverty guidelines, by 100 percent.

ORS 442.614(1)(a)(A).

Oregon law also requires that, before sending a patient's medical debt to collection, nonprofit hospitals must screen the patient to determine if they qualify for financial assistance, and must provide the patient with an application for financial assistance:

> Before transferring an unpaid charge for services to a debt collector *or referring an unpaid charge for collection*, a hospital or hospital-affiliated clinic shall:
>
> (a) Conduct a screening to determine if the patient qualifies for financial assistance as described in ORS 442.614(1)(a)(A), if applicable; and
>
> (b) Provide a copy of its financial assistance policy to the patient along with an application for financial assistance.

ORS 646A.677(4) (emphasis in original). If the patient qualifies for financial assistance, the hospital may condition financial assistance on requiring the patient to (1) respond to requests from the patient's primary insurer; and (2) provide information about any potential third party liability for the medical costs. ORS 646A.677(6). If a patient qualifies for 100 percent forgiveness, neither the hospital nor any debt collectors may charge interest on that patient's medical debt. ORS 646A.677(7).

"Collect[ing] or attempt[ing] to collect a debt without complying with the requirements of" ORS 646A.677(4) is a violation of Oregon's Unlawful Debt Collection Practices Act (OUDCPA). ORS 646.639(2)(u); *see also* ORS 646A.677(10) ("It is an unlawful collection practice under ORS 646.639 for a hospital, hospital-affiliated clinic or other debt collector to collect or attempt to collect a medical debt in a manner that the hospital, hospital-affiliated clinic or other debt collector knows, or after exercising reasonable diligence would know, is in violation of this section.").

The Court asked the parties to address whether Ameri EBO is or should be considered a party to whom St. Charles "referr[ed] an unpaid charge for collection" within the meaning of ORS 646A.677(4). The answer is, "Yes."

**I.    St. Charles referred Plaintiff's unpaid charges to Ameri EBO for collection.**

The answer to the Court's question turns on an analysis of ORS 646A.677(4). To conduct such an analysis, the Court must "ascertain the meaning of the statute most likely intended by the legislature that adopted it." *State v. Cloutier*, 351 Or. 68, 75, 261 P.3d 1234 (2011) (citing *State v. Gaines*, 346 Or. 160, 171–73, 206 P.3d 1042 (2009)). Under Oregon's familiar paradigm for statutory construction, this means the Court must "examin[e] the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *Id.* Of course, the Court should "give primary weight to the text and context of the disputed statutory terms." *Kinzua Resources v. Dep't of Envtl. Quality*, 366 Or. 674, 680, 468 P.3d 410 (2020) (quoting *Gaines*, 346 Or at 171). That is because "there is no more persuasive evidence of the intent of the legislature than 'the words by which the legislature undertook to give expression to its wishes.' " *Id.* (quoting *Gaines*, 346 Or. at 171); *see also Polacek & Polacek*, 349 Or. 278, 284, 243 P.3d 1190 (2010) ("[W]e begin with the statutory text and context, which are the best evidence of the legislature's intent.").

PAGE 8 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

The text of ORS 646A.677(4) is clear and unambiguous: it prohibits a nonprofit hospital from "referring" a patient's "unpaid charge" for "collection" before screening the patient for financial assistance eligibility and sending the patient a copy of the hospital's financial assistance policy. ORS 646A.677(4). An "unpaid charge" is just what the statute says it is—a charge for services the hospital provided that remains unpaid. In other words, an "unpaid charge" is an outstanding bill, or a debt. *See also* ORS 646.639(1)(f) (defining "debt" as "an obligation or alleged obligation that arises out of a consumer transaction").

To "refer" means, "to send or direct for treatment, aid, information, or decision." *Webster's Third New Int'l Dictionary* 1907 (unabridged ed. 2002) (**2 a**: to send or direct for treatment, aid, information, decision; < *refer* a student to a dictionary > < *refer* a bill to a committee > < *refer* a patient to a specialist >").[6] And by the statute's text, the purpose of the referral at issue is for collection of the unpaid charge. ORS 646A.677(4). Collection occurs, of course, when the hospital or other entity collects or attempts to collect the debt owed the hospital; again, the unpaid charge. *See* ORS 646A.677(10) (defining "unlawful collection practice"). A debt or unpaid charge is "referred for collection," then, when it is sent or directed to a person or entity to aid in its collection.

"Referring an unpaid charge for collections" describes precisely the relationship between St. Charles and Ameri EBO. The facts Plaintiff learned during discovery bear that out: in the

---

[6] Webster's *Third New International Dictionary* is the dictionary of choice in the Oregon appellate courts. *See, e.g.*, *Pacificorp Power Mkt'g, Inc. v. Dep't Revenue*, 340 Or. 204, 215, 131 P.3d 725 (2006). *Webster's* actually sets forth additional definitions of "refer" when used as a transitive verb, which bear less relation to the context here. Under those other definitions, "refer" means "to think of, regard, or classify under a subsuming clause or within a general category or group"; "to explain in terms of a general cause"; "to allot to a particular place, stage, or period"; or "to regard as coming from or localized in a specific area." *Webster's Third New Int'l Dictionary* 1907 (unabridged ed. 2002).

agreement between the two entities, the scope of work that Ameri EBO is to perform includes "*collection* and customer service in the name of St. Charles on non-delinquent self-pay balances due" to St. Charles. Dahab Decl. ¶ 5, Ex. 2 (emphasis added). St. Charles itself testified that Ameri EBO's role is to "tr[y] to collect money from [St. Charles] patient[s]" to pay their bills, Crowl Trans. at 19:15–21; and describes Ameri EBO as "a business partner of St. Charles that helps us [with] the heavy lifting of communication and outreach to patients" for purposes of collecting on self-pay accounts, Crowl Trans. at 13:4–6; *see also id.* at 28:22–29:2 (St. Charles essentially has "outsourced the process of what could be done in house, which is collecting these debts"). Once a statement containing an unpaid charge is issued to a patient, St. Charles refers the account to Ameri EBO, which assumes responsibility for collecting on that account until Level 5, when the account may be transferred further for collections as "bad debt." Crowl Trans. at 14:21–15:2.

    St. Charles may argue that Ameri EBO should be treated as nothing other than an arm or extension of the hospital or an entity to which St. Charles simply has outsourced its internal billing or collections departments, and thus cannot be subject to ORS 646A.677(4). But those arguments fail on both factual and legal grounds. Factually, Ameri EBO is not simply an "arm" or "extension" of St. Charles's billing or collections departments. A hospital does not pay its own billing employees a percentage of the money it recovers; that is the sort of financial arrangement a hospital has with a debt collector. Nor does the contract between St. Charles and Ameri EBO support that; its provisions describe the two as separate entities between which debts are "transferred." Dahab Decl. ¶ 5, Ex. 2 (SCHS_00000009) ("Contractor may keep Patient's accounts that are listed with Contractor for a minimum of one hundred-twenty (120) days from the day the account is *transferred* in the Placement File."); *id.* (SCHS_00000010) ("Contactor

PAGE 10 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

operates on a contingency fee basis and earns its contingency fee on actual monies received in connection with accounts *transferred* to Contractor . . . .").

And to the extent that St. Charles argues that ORS 646A.677(4) somehow does not apply as a matter of law because Ameri EBO is merely an entity to which St. Charles outsources its billings and collections work and not a debt collector, that fails too.  ORS 646A.677(4) does not impose that type of limitation; indeed, the statute requires St. Charles to conduct a screening before either (1) *transferring* a debt to a "debt collector," or (2) *referring* any unpaid charge for collections.  An entity to which a *referral* is made need not be a "debt collector," it simply must undertake to collect on the charge or debt.  *See, e.g.*, *Morgan v. Amex Assurance Co.*, 352 Or. 363, 372, 287 P.3d 1038 (2012) (court must assume that the omission of a word from one section, when it was used in another, was purposeful).  Given that the legislature used (indeed, *defined*) the phrase "debt collector" in other locations throughout the statutory scheme, this Court must assume that its omission from the referral clause of ORS 646A.677(4) was intentional.  That being so, that *St. Charles* does not view Ameri EBO as a "debt collector" is irrelevant.[7]  "Collections" of unpaid charges is precisely what the legislature intended to prohibit pre-screening, and it is precisely what Ameri EBO does with St. Charles accounts once it receives a referral.  St. Charles's failure to screen Plaintiff's account before referring it to Ameri EBO violated Oregon law.  *See also* ECF 49, at 27 (Plaintiff's argument that the practice of making

---

[7]    To be sure, Ameri EBO *is* a debt collector, and the entity through which it conducts business in Oregon, Ameri Collect, is registered as one in Oregon.  *See* ORS 646.639(1)(h) (" 'Debt collector' means a person that by direct or indirect action, conduct or practice collects or attempts to collect a debt owed, or alleged to be owed, to a creditor or debt buyer."); *see also* Nat'l Multistate Licensing Sys., NMLS Consumer Access, AmeriCollect, https://www.nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/908759 (last visited Jan 6, 2025).

PAGE 11 - PLAINTIFF'S SUR-RESPONSE TO DEFENDANT ST. CHARLES HEALTH SYSTEM, INC.'S MOTION TO DISMISS

repeated collections calls and sending multiple past-due bills before screening discourages patient applications for financial assistance).

## II. St. Charles's referral failed to comply with ORS 646A.677(4).

And St. Charles's referral to Ameri EBO plainly violates ORS 646A.677(4). Again, that statute requires St. Charles to screen patients for eligibility for financial assistance before referring the unpaid charge for collections. *Id.* St. Charles testified that at the time it refers a patient's debt to Ameri EBO to conduct collections, it has not conducted any screening to determine whether the patient is eligible. Crowl Trans. at 23:21–24:7.

## III. The Court should deny Defendants' motions and grant Plaintiff leave to file a Second Amended Complaint.

In light of the foregoing, Plaintiff respectfully urges the Court to deny Defendants' motions to dismiss Plaintiff's complaint. St. Charles violated ORS 646A.677(4), and therefore Oregon's UDCPA, by failing to screen Plaintiff's account for financial assistance eligibility before referring her debt to Ameri EBO for collections. Ray Klein, for its part, also violated Oregon and federal law by collecting on an account that it knew or should have known was eligible for 100 percent forgiveness under state law, and by charging interest on that account in direct violation of those state laws. Importantly, Ray Klein is liable regardless of the nature of St. Charles's violations; in all events, Ray Klein received a debt that it knew or should have known was eligible for adjustment, collected the debt, and charged interest on it. Ray Klein's violation is thus independent of any violation by St. Charles. Finally, in light of the additional facts obtained in discovery, Plaintiff respectfully requests leave to file a Second Amended Complaint.

DATED this 7th day of January, 2025.

        SUGERMAN DAHAB

        By: /s/ Nadia H. Dahab
        **David F. Sugerman**, OSB No. 862984
        **Nadia H. Dahab**, OSB No. 125630
        101 SW Main Street Suite 910
        Portland, OR 97204
        Tele: (503) 228-6474
        Fax: (503) 228-2556
        david@sugermandahab.com
        nadia@sugermandahab.com

        **Beth E. Terrell** (admitted *pro hac vice*)
        **Blythe H. Chandler** (admitted *pro hac vice*)
        **Jasmin Rezaie-Tirabadi** (admitted *pro hac vice*)
        TERRELL MARSHALL LAW GROUP PLLC
        936 North 34th Street Suite 300
        Seattle, WA 98103-8869
        Tele: (206) 816-6603
        Fax: (206) 319-5450
        bterrell@terrellmarshall.com
        bchandler@terrellmarshall.com
        jrezaie@terrellmarshall.com

        *Attorneys for Plaintiff and the proposed Class*